# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| NEXT PHASE DISTRIBUTION, INC. | ) | |
| 1050 Northfield Court, Suite 300-345 | ) | |
| Atlanta, GA 30076 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. <u>4:12-cv-00006</u> |
| | ) | |
| DOES 1 – 126 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff Next Phase Distribution, Inc. ("Plaintiff") for its Complaint against Defendants Doe 1 through Doe 126 (collectively referred to as "Defendants"), alleges as set forth below.

## NATURE OF THE CLAIM, JURISDICTION AND VENUE

1.     This is an action for copyright infringement under the United States Copyright Act, 17 U.S.C. §§ 101 etc. This Court has jurisdiction under 17 US.C. §101 *et seq.,* 28 US.C. § 1331 (federal question), and 28 US.C. § 1338(a) (copyright).

2.     Venue in this District is proper under 28 U.S.C. § 1391(b) and/or 28 U.S.C. § 1400(a). Although the true identity of each Defendant is unknown to the Plaintiff at this time, on information and belief, each Defendant may be found in this District (*see Exhibit D, listing the believed State of Residence for each John Doe*) and/or a substantial part of the alleged events occurred and/or have a significant effect within this District. Plaintiff has used its best efforts to

1

ensure that all Defendants identified reside or can be found in the geographic area of this Court. As explained below and in the attached *Declaration of Jon Nicolini*, Plaintiff has used its best efforts to identify Defendants only in the geographic location of the Court, and has cross-referenced the data with commercially available databases to ensure that all Defendants reside in the District. Such technology to identify the location of such Defendants is considered very accurate, but not necessarily accurate in all cases.

3.      On information and belief, personal jurisdiction in this District is proper because each Defendant, without consent or permission of Plaintiff as the exclusive rights owner, intentionally and willfully distributed, and offered to distribute over the Internet, copyrighted works for which Plaintiff has exclusive rights. In addition, each Defendant contracted with an Internet Service Provider (ISP) found in this District to provide each Defendant with access to the Internet. Therefore, venue in this Court is proper in accordance with 28 U.S.C. §§ 1391(b) and 1400(a).

4.      To ensure that venue and jurisdiction are proper, Plaintiff, through its agents and representatives, has undertaken efforts to only identify alleged infringers who are within or near the geographic location of the Court. *See attached Declaration of Jon Nicolini, Exhibit B*; *see Listing of the believed State of Residence for each John Doe, Exhibit D.*

**JOINDER**

5.      Pursuant to Fed.R.Civ.P. 20(a)(2), the Defendants have been properly joined, as set forth in detail below and in Exhibit B, because Plaintiff alleges that all Defendants have traded (uploaded and downloaded) the exact same file of the copyrighted works in related transactions through torrent software. The Defendants were identified through the use of forensic

2

software. Plaintiff, through its agents and representatives, has taken steps to confirm that all Defendants have in fact engaged in a series of related transactions or occurrences. All Defendants identified in Exhibit A (i) have traded exactly the same file of the copyrighted work as shown by the identical hash mark; (ii) have traded (simultaneously uploaded and downloaded) the exact same file as is the nature of torrent software; and (iii) the alleged events occurred within a limited period of time. *See attached Declaration of Jon Nicolini, Exhibit B*. Further, Plaintiff has used its best efforts to only identify Defendants who are within the geographic location of the Court, as explained in the Complaint and the *Declaration of Jon Nicolini. See attached Declaration of Jon Nicolini, Exhibit B*; *see also Listing of the believed State of Residence for each John Doe, Exhibit D.*

## GENERAL ALLEGATIONS

6.      Next Phase Distribution, Inc. is a corporation duly formed and existing under the laws of California, and has a principal place of business at 1050 Northfiled Court, Suite 300-345, Atlanta, GA 30076.

7.      The true names of Defendants are unknown to the Plaintiff at this time. Each Defendant is known to Plaintiff only by the Internet Protocol ("IP") address assigned to that Defendant by his, her or its Internet Service Provider on the date and at the time at which the infringing activity of each Defendant was observed. The IP address of each Defendant, together with the date and time at which his, her or its infringing activity was observed and the hash value of the file, is included on **Exhibit A** which is attached hereto. The technology used to identify each Defendant is explained in **Exhibit B.** On information and belief, Plaintiff states that information obtained in discovery will lead to the identification of each Defendants' true names and addresses and will permit Plaintiff to amend this Complaint to state the same.

3

8.      The Motion Picture "Horny Black Mothers & Daughters #8" (the "Motion Picture") was produced by Plaintiff and released on December 13, 2010. The copyright was registered in January 7, 2011,  the Copyright Registration Number is PA0001728772/2011-01-07. **See Exhibit C.** It is offered as a DVD through various vendors, including [www.cduniverse](www.cduniverse).com for $22.39, and as "view on demand."

9.       The torrent protocol makes home computers with low bandwidth capable of participating in large data transfers across so-called "Peer-to-Peer" (P2P) networks. The first file-provider decides to share a file ("seed") with a torrent network. Then other users ("peers") within the network connect to the seed file for downloading. As additional peers request the same file, they become part of the same network. Unlike a traditional P2P network, each new peer receives a different piece of the data from each peer who has already downloaded the file. This system of multiple pieces of data coming from peers is called a "swarm." As a result, every downloader is also an uploader of the illegally transferred file and is simultaneously taking copyrighted material through many ISPs in numerous jurisdictions around the country.

10.     Once a participant in these downloading and uploading transactions becomes a peer, the software reassembles the file and the peer can view the Motion Picture. Once a peer has downloaded the complete file, that peer becomes an additional seed because he or she continues to distribute the torrent file (here: the copyrighted work).

11.     In this case, all Defendants have not only swapped the same copyrighted work, they have swapped the exact same file. The devices connected to all IP addresses identified in Exhibit A have utilized the same exact hash mark (a 40-character hexadecimal string which through cryptographic methods clearly identifies the Release, comparable to a forensic digital fingerprint) which establishes them as having taken part in the same series of transactions. All

4

alleged infringers downloaded the exact same copyrighted work while trading in the same torrent.

      12.     While Defendants engaged in this downloading and/or uploading of the file, they exposed their IP address to the public. With torrent software, one can see the IP address of the various computers that one is connected to, and which are sharing files in cooperation with, one's own computer.

      13.     Through the use of torrent technology, the Defendants in this case engaged in deliberate distribution of unlawful copies of the Motion Picture. Moreover, the Defendants in this case engaged in a series of related transactions, because they all downloaded the exact same file (not just the same copyrighted work), within a limited period of time. Furthermore, because of the nature of torrent software, they engaged in a series of related transactions because in order to download a movie (or parts of it), one must permit other users to download and/or upload the file from one's own computer. Thus, the Defendants were simultaneously trading (downloading and/or uploading) the exact same file during a limited period of time.

      14.     By using geo-location technology and referencing the tracking data with other databases, Plaintiff has attempted to ensure that the IP addresses are likely within the geographic location of the Court. *See attached Listing of the believed State of Residence for each John Doe, Exhibit D.*

Plaintiff has used its best efforts to only identify Defendants who are within the geographic location of the Court, as explained in the Complaint and the *Declaration of Jon Nicolini*. The time period during which the identified illegal downloads occurred is limited to ensure commonality amongst the Defendants. The Defendants so identified downloaded the

identical copyrighted work as part of the same series of transactions or occurrences and are thus
specifically and directly related.

## COUNT I

## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§ 101 ET SEQ.

15.     Plaintiff repeats and reincorporates herein the allegations set forth in paragraphs
1-14, above.

16.     Plaintiff is a motion picture production company. Plaintiff is, and at all relevant
times has been, the owner of the copyrights and/or the owner of the exclusive rights under the
copyrights in the United States in the Motion Picture at issue.

17.     The Motion Picture is an original work that is copyrighted under United States
law. The Motion Picture is the subject of a Copyright Registration, and Plaintiff owns that
registration. The title of the Motion Picture and its copyright registration number are included in
**Exhibit C**. Thus, Plaintiff is entitled to statutory remedies of the U.S. Copyright Act.

18.     Plaintiff has either published or licensed for publication all copies of the Motion
Picture in compliance with the copyright laws.

19.     **Exhibit A** identifies each Defendant (one Defendant per row in the table set out in
**Exhibit A**) that has, without the permission or consent of the Plaintiff, reproduced and
distributed to the public at least a substantial portion of the Motion Picture. That is, each
Defendant listed in **Exhibit A** has, without permission or consent of Plaintiff, reproduced and
distributed to the public at least a substantial portion of Plaintiff's copyrighted Motion Picture.

20.     **Exhibit A** also sets out the Internet Protocol ("IP") address associated with each
respective Defendant, the identity of the Internet Service Provider (often referred to as an "ISP")

associated with the IP address, the last-observed date and time ("Timestamp") that the infringement by that Defendant of Plaintiff's copyright in the Motion Picture was observed and the software protocol used by the Defendant. It also shows the hash value of the file so traded, which shows that each Defendant traded exactly the same file.

21.     Further, Plaintiff is informed and believes that each of the Defendants, without the permission or consent of Plaintiff, has used, and continues to use, an online media distribution system (sometimes referred to as a "peer to peer" network or a "P2P" network) to reproduce at least one copy of the Motion Picture, and to distribute to the public, including by making available for distribution to others, copies of the Motion Picture. In doing so, each Defendant has violated, and continues to violate, Plaintiff's exclusive rights of reproduction and distribution protected under the Copyright Act of 1976 (17 U.S.C. § 101 et seq.), including under 17 U.S.C. § 106(1) and (3).

22.     Each Defendant has acted in cooperation with the other Defendants by agreeing to provide, and actually providing, on a P2P network an infringing reproduction of at least substantial portions of Plaintiff's copyrighted Motion Picture, in anticipation of the other Defendants doing likewise with respect to that work and/or other works. Further in this regard, all the Defendants have engaged in a related series of transactions to engage in unlawful reproduction and distribution of Plaintiff's copyrighted Motion Picture. Each Defendant traded the exact same file.

23.     Each of the Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff. The technology used to identify each Defendant is explained in **Exhibit B.**

24.     Plaintiff has suffered both money damages and irreparable harm as a result of each Defendant's infringement of Plaintiff's copyrights in the Motion Picture. In addition, discovery may disclose that one or more of the Defendants obtained profits as a result of such infringement.

25.     As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to monetary relief pursuant to 17 U.S.C. § 504, which may include Plaintiff's damages caused by each Defendant and each Defendant's profits and/or statutory damages, and to Plaintiff's attorney fees and costs pursuant to 17 U.S.C. § 505.

26.     The conduct of each Defendant has caused, is causing and, unless enjoined and restrained by this Court will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyrights and ordering that each Defendant destroy all copies of the copyrighted motion pictures made in violation of the Plaintiffs' copyrights.


## COUNT II

## CONTRIBUTORY INFRINGEMENT

27.     Plaintiff repeats and reincorporates herein the allegations set forth in paragraphs 1-26, above.

28.     Plaintiff is, and at all relevant times has been, the owner of the copyrights and/or the owner of the exclusive rights under the copyrights in the United States in the Motion Picture at issue.

29.     Through use of torrent software and the process described above, each Defendant copied the constituent elements of the copyrighted work. Further, each Defendant traded not just the same copyrighted work, but the exact same file, as shown by the identical hash value.

30.     By participating in the file swapping with the other Defendants, each Defendant induced or caused or materially contributed to the infringing conduct of the other Defendants.

31.     Each Defendant knew or should have known that other torrent users (Defendants) involved in the file swapping were infringing upon Plaintiff's copyrighted work. Each Defendant directly participated in the series of uploading and downloading of the exact same file and therefore materially contributed to each other Defendant's infringing activities.

32.     Each of the Defendants' contributory infringements were committed willfully within the meaning of 17 U.S.C. § 504(c)(2).

33.     As a result, Plaintiff has suffered damages that were proximately caused by each of the Defendants. Plaintiff has suffered both money damages and irreparable harm as a result of each Defendant's infringement of Plaintiff's copyrights in the Motion Picture. In addition, discovery may disclose that one or more of the Defendants obtained profits as a result of such infringement.

34.     The conduct of each Defendant has caused, is causing and, unless enjoined and restrained by this Court will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyrights and ordering that each Defendant destroy all copies of the copyrighted motion pictures made in violation of the Plaintiffs' copyrights.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court enter judgment against each Defendant as follows:

A. For a judgment that such Defendant has infringed Plaintiff's copyright in the Motion Picture;

B. For entry of preliminary and permanent injunctions providing that such Defendant shall be enjoined from directly or indirectly infringing the Plaintiffs' rights in the Motion Picture, including without limitation by using the Internet to reproduce or copy the Motion Picture, to distribute the Motion Picture, or to make the Motion Picture available for distribution to anyone, except pursuant to a lawful license or with the express authority of Plaintiffs;

C. For entry of preliminary and permanent mandatory injunctions providing that such Defendant shall destroy all copies of the Motion Picture that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of the Motion Picture transferred onto any physical medium or device in Defendant's possession, custody, or control;

D. For entry of judgment that such Defendant shall pay actual damages and profits, or statutory damages, pursuant to 17 U.S.C. § 504, at the election of Plaintiff;

E. For entry of judgment that such Defendant shall pay Plaintiff's costs;

F. For entry of judgment that such Defendant shall pay Plaintiff's reasonable attorney fees; and

G. For entry of judgment that Plaintiff have such other relief as justice may require and/or as otherwise deemed just and proper by this Court.

Respectfully submitted this 5th day of January, 2012.

FOR THE PLAINTIFF:


By:    /s/ Terik Hashmi
Terik Hashmi (OH Supreme Court ID 0064329)
FL/ND Admitted
Transnational Law Group, LLC
429 Lenox Avenue, Suite 5C13
Miami Beach, FL 33139
Phone: (888) 731-8955
Fax: (305) 721-1685
Email:
terik.hashmi.esq@transnationallawgroup.com

ATTORNEY FOR PLAINTIFF

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.


FOR THE PLAINTIFF:


By: ___/s/ Terik Hashmi_____
Terik Hashmi (OH Supreme Court ID 0064329)
FL/ND Admitted
Transnational Law Group, LLC
429 Lenox Avenue, Suite 5C13
Miami Beach, FL 33139
Phone: (888) 731-8955
Fax: (305) 721-1685
Email:
terik.hashmi.esq@transnationallawgroup.com
ATTORNEY FOR PLAINTIFF

## <u>VERIFICATION</u>

I, Terik Hashmi, am the attorney who prepared this Complaint. I verify and declare under 28 USC § 1746 that I have read the foregoing Complaint and it is, based on my personal knowledge and information I have reviewed, true. In particular, I have taken the following steps to ensure that the Complaint and its allegations comply with all requirements:

1) I have personally discussed in detail the data about alleged infringers (identified by IP address) with a technical specialist at the Copyright Enforcement Group (CEG), Mr. Jon Nicolini, Vice President of Technology. Mr. Jon Nicolini explained the commonality of all identified IP addresses: (a) The devices connected to all IP addresses identified have utilized the same exact hash mark (a 40-character hexadecimal string which through cryptographic methods clearly identifies the Release - comparable to a fingerprint) which corroborates them within the same series of transactions; (b) all alleged infringers downloaded the same file of the copyrighted work while trading in the same torrent; (c) Mr. Jon Nicolini also explained that he made an effort to create a list of alleged infringers who are located within the jurisdiction of the court where the Complaint is to be filed by using geo-location technology; (d) Mr. Jon Nicolini specifically limited the time period during which the investigated alleged downloads occurred to ensure commonality amongst the alleged infringers. Thus the alleged infringers were likely within the same swarm and engaged in a series of related transactions. The identified IP addresses shared the files around the same time. Mr. Jon Nicolini explained that the alleged infringers so identified downloaded the identical file of the copyrighted work as part of the same series of transactions or occurrences, and are thus related.

2) I particularly inquired into the issue of the relationship among the alleged infringers by (i) researching the functioning of torrent technology, (ii) participating in a live demonstration of torrent software, and (iii) interviewing CEG personnel. Mr. Jon Nicolini explained that the alleged infringers in this case engaged in a series of related transactions, because they all downloaded the exact same file (not just the same copyrighted work), within a limited period of time. Furthermore, because of the nature of torrent software, they engaged in a series of related transactions because in order to download a movie (or parts of it), one must permit other users to download and/or upload the file from one's own computer. Thus, the Defendants were simultaneously trading (downloading and/or uploading) the exact same file during a limited period of time. While Defendants engaged in this downloading and/or uploading of the file, they exposed their IP address. With torrent software, one can see the IP address of the various computers that they are connected to, and which are sharing files in cooperation with, one's own computer.

3) Mr. Jon Nicolini further confirmed to me the direct digital connection and relationship among the infringers based on the torrent process and provided the following additional information: The process begins with one user accessing the Internet through an Internet Service Provider ("ISP") and intentionally making a

digital file of the work available on the Internet to the public from his or her computer. This first file is often referred to as the first "seed." The person making this seed available as the "original seeder." Persons seeking to download such a work also access the Internet through an ISP (which may or may not be the same ISP as used by the original seeder) and seek out the work on a P2P network. With the availability of the seed, other users, who are referred to as "peers," access the Internet and request the file (by searching for its title or even searching for the torrent's "hash") and engage the original seeder and/or each other in a group, sometimes referred to as a "swarm," and begin downloading the seed file. In turn, as each peer receives portions of the seed, most often that peer makes those portions available to other peers in the swarm. Therefore, each peer in the swarm is at least copying and is usually distributing, as a follow-on seeder, copyrighted material at the same time. Any BitTorrent client may be used to join a swarm. As more peers join a swarm at any one instant, they obtain the content at even greater speeds because of the increasing number of peers simultaneously offering the content as seeders themselves for unlawful distribution. As time goes on, the size of the swarm varies, yet it may endure for a long period, with some swarms enduring for 6 months to well over a year depending on the popularity of a particular motion picture. That is, each peer (i.e. member of a swarm) in a P2P network has acted and acts in cooperation with the other peers by agreeing to provide, and actually providing, an infringing reproduction of at least a substantial portion of a copyrighted work in anticipation of the other peers doing likewise with respect to that work and/or other works. Joining a P2P network is an intentional act, requiring the selection by a peer of multiple links to do so.

4) I also inquired into the issue of jurisdiction over the alleged infringers. Mr. Jon Nicolini and other CEG personnel explained that they make every effort to ensure that all alleged infringers have in fact engaged in a series of related transactions and can thus be properly joined in one lawsuit. Most importantly: (i) CEG has identified only alleged infringers who traded exactly the same file of the copyrighted works at issue (not just the same copyrighted work), as identified by the hash value; and (ii) CEG has limited the time period during which they searched copyright infringements; in addition, (iii) CEG has limited the geographic search to ensure as much as technically possible that the alleged infringers are in fact within the geographic area of the court. However, because of intermediary ISPs and the location of the ISPs technical facilities, the location cannot always be exactly pinpointed.

5) I personally conducted a random batch test of the purported locations of the IP addresses in Exhibit A to ensure that the Defendants likely reside within the jurisdiction of the Court or can be found there, or a substantial part of the events alleged occurred or had an effect within the jurisdiction of the Court. I checked the locations through the IP locators at http://www.ip-address.org and/or http://www.arin.net and/or http://www.ipligence.com. During my search, I did not find any IP addresses that were outside the geographic area of the Court. However, I know that such location checks are not absolutely accurate in all circumstances. For example, because my personal checks were conducted after the file swapping took place, the IP address may have changed. However, I have used my best efforts to

14

ensure that all Defendants are in fact residents of the State and/or within the geographic location of the Court.

6)  I have personally participated in an information session on torrent software, conducted by Copyright Enforcement Group technical personnel, including a live demonstration of the use of torrent software. I personally saw the multiple steps that are required to log into a torrent system to trade files with one another, that each user must connect with other users and simultaneously upload and download ("trade") a particular file for the file swapping to work, and that the users' IP addresses are exposed during the process so that one can see who is simultaneously uploading and downloading the file from one's own computer.

7)  I personally checked that a copyright registration for the work at issue has been filed properly through the searchable database of the U.S. Copyright office at http://copyright.gov/records/, to ensure that the work at issue is eligible for statutory remedies under Section 412 of the Copyright Law.

Thus, I verify and declare under penalty of perjury that the foregoing statements and the statements in the Complaint are true and correct to the best of my knowledge.

Date: January 5, 2012

_/s/ Terik Hashmi
Terik Hashmi

15

**EXHIBITS:**

Exhibit A – Table of Last-Observed Infringements by Defendants of Plaintiff's Copyright in the Motion Picture.

Exhibit B – Technology Declaration of Mr. Jon Nicolini, explaining the technology used to identify the alleged copyright infringers.

Exhibit C – Copyright registration record of the Motion Picture at issue.

Exhibit D – Believed State of Residence for each John Doe

Exhibit A – Table of Last-Observed Infringements by Defendants of Plaintiff's Copyright in the Motion Picture.

Exhibit B – Technology Declaration of Mr. Jon Nicolini, explaining the technology used to identify the alleged copyright infringers

Exhibit C – Copyright registration record of the
Motion Picture at issue

Exhibit D – Believed State of Residence for each John Doe